### DENISON v. POLK.

1. HUSBAND AND WIFE—COERCION—FRAUD—ASSIGNMENT OF LEGACY —EVIDENCE—FINDING OF COURT—DELAY.

In woman's suit against husband who had divorced her to set aside her assignment of a legacy to him for a stated consideration of $2,500 on ground of coercion, record which discloses that a view of the witnesses must have been of aid in weighing what they said *held,* to sustain finding of trial court that defendant had met the burden of proof in establishing fair dealing with his wife with reference to the assignment and that her delay of about 10 years in asserting the wrong weakened her claims of coercion and fraud.

2. COSTS—SUPREME COURT—BRIEFS.

No costs of Supreme Court are allowed appellee upon affirmance of decree of trial court where he filed no brief in this court.

Appeal from Wayne; Campbell (Allan), J. Submitted April 6, 1939. (Docket No. 38, Calendar No. 40,166.) Decided June 5, 1939.

Bill by Laura M. Denison against Alexander J. Polk to set aside an assignment of a legacy and for other relief. Bill dismissed. Plaintiff appeals. Affirmed.

*Charles L. Goldstein*, for plaintiff.

WIEST, J. The parties were formerly husband and wife. They were married in February, 1918, and divorced in April, 1927. The divorce was granted on the application of the husband and without opposition by the wife. Plaintiff's father, who lived in Pennsylvania, in his will left her a legacy subject to a life estate in her mother, and in March, 1926, plaintiff assigned the legacy to defendant for a stated consideration of $2,500. The defendant had the assignment recorded in Pennsylvania after the divorce. The bill herein was filed in July, 1936, to set the assignment aside on the grounds of coercion, intimidation, and fraud. In his answer to the bill defendant offered, upon return of the $2,500, with interest, to re-assign to plaintiff.

During the marriage plaintiff was a clerk and stenographer in defendant's law office. Defendant was an attorney at law but in 1936 resigned from the bar. During the time of the marriage defendant received large sums of money from real estate transactions and made deposits in various banks in the joint names of himself and wife.

At the hearing, when plaintiff was asked by her counsel whether she received $2,500 for the assignment, she made the equivocal answer:

"I didn't receive in particular, $2,500, no, sir.

"*Q.* Did you receive, from time to time, sums of money?

"*A.* Large sums of money, yes. I was conducting his business in my name. I wrote checks."

Later she denied receiving any consideration. Plaintiff testified:

"*Q.* Now, during all those years, he supported you very handsomely, did he not?

"*A.* Yes, he did. And he had great confidence in me. He had his bank account jointly with me, and I had a right to draw on his account, as well as himself. * * * He bought me several automobiles. He bought me a Hudson, bought me a Cadillac roadster, and he bought me a Cadillac coupe."

She claims that her mother, who had life use of the estate of her father, offered to accept 60 per cent. of the estate and divide the other 40 per cent. among the children, who were residuary legatees, and when she informed defendant thereof he said:

"I was crazy and I should be put in an institution. He further said he would see that I would be, if I went and did anything like that. I was absolutely insane. I did not make any assignment to my mother. * * * He was continually threatening me, my life, and my sanity. He was going to have me placed in an institution, and he threatened me with his revolver, and other things. * * * He said that is where I should be, and that is where he would see I would be. I was not a fit person to look after my own affairs. During all that time, however, I was taking care of his office. He said to me further with regard to this assignment, and the purpose of it, that he wanted me to sign this for my own protection, that I was not a fit person to look after my own affairs. I was all right to look after other people's affairs, not my own. He wanted me to sign this for my own protection, so that I would not jeopardize my interest in the estate. * * * He would look after

my interest, and any time anything should come up, he would see I was taken care of promptly. * * * My mother is still alive. There has not been any of this legacy paid since that time, to me or any of the children.''

She claims he threatened her several times with a cocked revolver, stating:

''At the time it just looked like a revolver. It was ready to pop. It was all cocked; I heard him cock it. He was holding it for three hours. All I saw was the muzzle pointing at me. He did not hold it against me, just about the distance that you are away from me now, for three hours.''

Rather a tiresome ordeal for both parties, if it occurred.

Defendant denied the allegations of plaintiff, and claimed that she wanted to realize something out of the estate without awaiting the death of her mother and he paid her $2,500 in cash for the assignment.

The record discloses that a view of the witnesses must have been of aid in weighing what they said.

The court found that defendant had met the burden of proof in establishing fair dealing with his wife in reference to the assignment and that plaintiff's long delay in asserting the wrong she now alleges weakened her present claims of coercion and fraud.

We have reached the same conclusion.

The decree in the circuit is affirmed but defendant, not having filed any brief, will not recover costs of this court.

Butzel, C. J., and Bushnell, Sharpe, Potter, Chandler, North, and McAllister, JJ., concurred.